# IN THE UNITED STATES DISTRICT COURT OR MARYLAND
## BALTIMORE DIVISION

| | |
|---|---|
| JOSEPH REDD<br>2109 Cliftwood Avenue<br>Baltimore, Maryland 21213<br><br>    Plaintiff,<br><br>v.<br><br>BROADWAY SERVICES, INC.<br>3709 E. Monument St<br>Baltimore, MD 21205<br><br>    Serve:  Peter Seidl, Resident Agent<br>               3709 E. Monument St<br>               Baltimore MD 21205<br><br>    Defendant. | Civil Action No: |

## **COMPLAINT**

Comes now Plaintiff Joseph Redd, by his undersigned counsel, and hereby sues Defendant Broadway Services, Inc. for violation of Title VII of the Civil Rights Act of 1964 and violation of Maryland Code Ann. (St. Gov.) 20-601, et seq., and in support thereof, states as follows:

## **NATURE OF THE ACTION**

1. Plaintiff brings this action seeking damages arising out of Defendant's discriminatory actions towards Plaintiff based on his sexual orientation.

2. The actions Defendant, acting through its agents, took against Plaintiff in early November of 2020—forcing him to transport a belligerently homophobic passenger and ultimately firing him for insubordination when he refused—violated his rights under § 2000e-2(a) of Title VII of the Civil Rights Act of 1964 and § 20-606(a)(1)(i) of Maryland's State Government Article.

## JURISDICTION AND VENUE

3. This Court has federal jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

4. Venue is proper in this Court under 28 U.S.C. §1391(b) because Defendant Broadway Services operates out of Baltimore, Maryland and the incident at issue occurred in Baltimore, Maryland.

## THE PARTIES

5. Plaintiff Joseph Redd is an adult resident of the State of Maryland. During the relevant period, he was an openly gay, African American man who was employed as a shuttle driver by Defendant.

6. Defendant Broadway Services is a contract service company operating out of Baltimore, Maryland, with an office located at 3709 East Monument Street. The company provides, among other things, shuttle services to its client Johns Hopkins University, transporting patients and employees across its campus in the city.

## EXHAUSTION OF ADIMINSTRATIVE REMEDIES

7. Plaintiff filed his Charge of Discrimination with the Equal Employment Opportunity Commission, Charge No. 531-2021-340, on January 22, 2021.

8. The Charge was cross filed with the Maryland Commission on Civil Rights ("MCCR") and on or about May 11, 2022, MCCR issued a written finding.

9. More than 180 has passed since this case was filed with EEOC.

## FACTS

*Plaintiff's Work History with Defendant*

10. In or around May of 2019, Plaintiff began working for Defendant as a shuttle driver.

11. Depending on the day, Plaintiff was tasked with transporting the patients and/or employees of Johns Hopkins University.

12. From the time Plaintiff started working with the Defendant in 2019 to his discriminatory discharge in November of 2020, Plaintiff was a model employee. He had received several awards for his outstanding performance, including an employee of the month and an employee of the year award, as well as a safe driving bonus award. Moreover, prior to his firing, Defendant had not subjected Plaintiff to any kind of formal disciplinary action.

*The incident with the homophobic passenger on November 2, 2020*

13. At around 10:30 a.m. on November 2, 2020, Plaintiff parked his vehicle in front 600 Wolfe St. in a spot reserved for passenger shuttles.

14. On that particular day, Plaintiff was operating an "on call" shuttle reserved for patients only. He was not permitted to take non-patients, unless Broadway Services informed him otherwise.

15. A couple of minutes after parking, a woman in JHU scrubs approached Plaintiff's vehicle from the passenger's side and asked for a ride.

16. Plaintiff politely told her that his shuttle was reserved for patients. He explained that, unless he got special permission from dispatch, he could not take her on as a passenger.

17. The woman claimed that she had called dispatch asking for a shuttle, but Plaintiff had not received a call from dispatch himself. He was not permitted to take non-patients until he received explicit instructions from his employer.

18. The woman became frustrated and, as she turned away to leave, she called

3

Plaintiff a "faggot."

19. Plaintiff, understandably upset by the unprovoked slur, got out of his shuttle on the driver's side of the vehicle and called her a "bitch." He did not shout this, but it was loud enough for the woman to hear.

20. Upon hearing this, the woman, who was still on the driver's side of the vehicle, went around the shuttle and confronted Plaintiff on the driver's side.

21. She got up in his face and called him a "faggot" for the second time.

22. Mr. Redd tried to respond to the slur, but he choked up. In response, she then laughed at Plaintiff and said that she would "call her peeps" to deal with him. Plaintiff interpreted this as a threat.

23. The woman then called Plaintiff a "faggot" for the third time. Plaintiff, upset by this blatant homophobia, threw his arms up in the air and, feeling like his entire way of life was being attacked, said, "There is somebody gay in everybody's family!" The woman, however, did not respond and just walked away.

*Defendant demands that Plaintiff take on the homophobic passenger and is punished*

24. Shortly after the woman walked away, Plaintiff called dispatch to see if she had actually called in a request. He called twice, but received no response.

25. He then called his manager Tandra Goodman ("Ms. Goodman"), who informed Plaintiff that someone had called in a request to dispatch. Ms. Goodman told Plaintiff to take the woman on as a passenger.

26. Plaintiff, however, said that he would feel uncomfortable and unsafe taking on a passenger who, in the space of a few minutes, had called him a "faggot" three times. Plaintiff asked Ms. Goodman if his designated backup driver could take the woman instead. Ms. Goodman, however, said that his backup driver was not available.

27. Plaintiff refused to take the woman on as a passenger; in response, Ms. Goodman told Plaintiff to come back to the office and clock out for the day.

28. Even though Ms. Goodman said backup was not available, shortly after Plaintiff got off the phone, he heard Ms. Goodman request a backup driver over the dispatch radio to come to his location and pick up the woman.

29. When Plaintiff returned to the office, Ms. Goodman asked to speak with him privately. She told him that, because of his actions, he should not come in to work the following day. She then asked him to "calm down" before writing a grievance. Plaintiff responded by asking, "What would you do if someone called you a nigger?" Both Ms. Goodman and Plaintiff are black.

30. Ms. Goodman did not respond, so Plaintiff left the room and filed his grievance before leaving for home.

31. Later that day, Plaintiff called the Vice President of Broadway Services and explained what happened. The Vice President told Plaintiff that, if he is going to be punished, the woman who works for Johns Hopkins should be punished as well. However, the Vice President did not express any kind of remorse or regret over the fact that one of his employees, Ms. Goodman, had demanded Plaintiff transport a homophobic passenger and then suspended him when he did not comply with that demand.

32. Over the course of that same evening, Plaintiff received three calls from fellow coworkers who had heard what had happened. Each of these coworkers congratulated Plaintiff for standing up for himself and assured him that he had done the right thing by refusing to take on the woman as a passenger.

33. The next day, November 3rd, Plaintiff received a call from Ms. Goodman asking him to come into the office the following day, November 4th.

34. Plaintiff also received a call from one of his coworkers, who informed him that Broadway Services had started reassigning his shifts to other employees. The coworker told Plaintiff that he had refused to take on these shifts because he believed what Broadway Services was doing to Plaintiff was wrong.

*Plaintiff is wrongfully terminated on November 4, 2020*

35. Plaintiff arrived at work around 7:15 a.m. on November 4, 2020 to meet with Ms. Goodman.

36. When he entered her office, Ms. Goodman informed him that Broadway Services was terminating his employment due to his "insubordination" the other day. Ms. Goodman specifically pointed to the fact that he left his shuttle and threw his hands up in the air as the reason for his summary termination. However, neither Ms. Goodman nor anyone else in a position of power at Broadway services bothered to ask Plaintiff to explain his actions, tell his side of the story.

37. Ms. Goodman expressed regret that she had to fire Plaintiff. She said it was difficult to have to fire such a talented employee. She also told him that her immediate superior had counseled against firing Plaintiff, but the decision was made regardless by those closer to the top of the company.

38. After handing him his pink slip, Ms. Goodman advised Plaintiff, "If I were you, I wouldn't take this." Plaintiff agreed and told her that he would start searching for a lawyer.

*Defendant knew or should have known about Plaintiff's Sexual Orientation*

39. Although Plaintiff did not explicitly announce his sexual orientation to his employer, he made no secret of it either: he displays effeminate mannerisms, and he was regularly mocked as a result. Fellow employees would routinely toss emasculating labels at him

6

like "girl" and "pussy."

40. Even if his sexuality was not obvious to Defendant before the incident on November 2, 2020, Plaintiff's conversations with the Defendant and its agents immediately after his encounter with the Johns Hopkins employee leave no room for doubt that Defendant was on notice of Plaintiff's sexual orientation: Plaintiff made it clear to both Ms. Goodman and the Vice President of Broadway Services that the woman' homophobic remarks deeply hurt him and made him feel both unsafe and uncomfortable.

## COUNT I
## DISCRIMINATION ON THE BASIS OF SEX (TITLE VII AND MFEPA)

41. Plaintiff repeats and realleges each paragraph above, as if fully set forth herein.

42. Plaintiff is an individual who is protected against discrimination on the basis of his sex (male) and whose sexual orientation is protected under TITLE VII (42U.S.C. § 2000e–2(a)) and MFEPA (Md. Code Ann., State Gov't § 20-601).

43. Plaintiff experienced harassment from fellow Broadway Service employees including mocking and name calling that was pervasive and unwelcome.

44. Plaintiff was harassed because of his sex and his sexual orientation.

45. The nature of Plaintiff's harassment was sufficiently severe to create an abusive working environment where he experienced routine name calling and mocking with routine labels such as "girl" and "pussy" from fellow Broadway Services employees and from the John Hopkins employee who called him a "faggot."

46. Employer knew about the harassment experience by Plaintiff where Plaintiff filled out two grievances detailing the harassment he experienced from the Broadway Services employees and the John Hopkins employee, and gave them directly to Human Resources of Broadway Services.

47. As a direct and proximate result of Defendants' unlawful hostile work

environment, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

48. As a direct and proximate result of Defendants' unlawful hostile work environment in violation of Title VII and MFEPA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

## COUNT II
## WRONGFUL TERMINATION (TITLE VII AND MFEPA)

49. Plaintiff repeats and realleges each paragraph above, as if fully set forth herein.

50. Plaintiff is an individual who is protected against discrimination on the basis of his sex (male) and whose sexual orientation is protected under TITLE VII (42U.S.C. § 2000e–2(a)) and MFEPA (Md. Code Ann., State Gov't § 20-601).

51. Broadway Services fired Plaintiff.

52. But for Plaintiff's identification as a homosexual, he would not have been fired by Broadway Services where Plaintiff had no past history of bad behavior or infractions, and Broadway Services cited a single "infraction" by Plaintiff only after he refused to pick up a passenger who attacked Plaintiff's sexual orientation.

53. As a direct and proximate result of Defendants' unlawful wrongful termination of Plaintiff in violation of Title VII and MFEPA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

54. As a direct and proximate result of Defendants' unlawful wrongful termination of Plaintiff in violation of Title VII and MFEPA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self- confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

### COUNT III
### DISPARATE TREATMENT (TITLE VII AND MFEPA)

55. Plaintiff repeats and realleges each paragraph above, as if fully set forth herein.

56. Plaintiff is an individual who is protected against discrimination on the basis of his sex (male) and whose sexual orientation is protected under TITLE VII (42U.S.C. § 2000e–2(a)) and MFEPA (Md. Code Ann., State Gov't § 20-601).

57. Plaintiff's prohibited conduct was comparable to the misconduct of employees outside of the working class where other employees committed infractions such as falling asleep during a shift and failing to pick up passengers who had called Broadway Services to be transported to their destination.

58. Plaintiff's discipline, here immediate termination, enforced against him by Broadway Services was more severe than the discipline enforced against other employees where Broadway Services did not terminate other employees for falling asleep during a shift or neglecting to pick up passengers.

59. As a direct and proximate result of Defendants' unlawful disparate discipline of Plaintiff in violation of Title VII and MFEPA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

60. As a direct and proximate result of Defendants' unlawful wrongful disparate discipline of Plaintiff in violation of Title VII and MFEPA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self- confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joseph Redd, Jr. respectfully requests this Honorable Court:

A. Award judgment in favor of Plaintiff and against Defendant in an amount not less than $75,000.00 for economic damages and not less than $300,000.00 for compensatory damages for violation of Title VII and Maryland Law;

B. Award Plaintiff all of her costs and fees associated with this matter, including attorneys' fees and,

C. For such other and further relief as justice may so require.

## JURY DEMAND

Plaintiff demands a jury trial on all issues triable by jury.

Respectfully Submitted,

LAW OFFICE OF NEIL S. HYMAN, LLC

By:   /s/ Neil S. Hyman_____
Neil S. Hyman, Esquire
Law Office of Neil S. Hyman, LLC
4520 East West Hwy, Suite 700
Bethesda, Maryland 20814
(301) 841-7105 (p)
neil@neilhymanlaw.com
Bar No.: 15158
*Counsel for Plaintiff*